CHARLES AND MARJORIE YOUNG, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Young v. Commissioner
Docket No. 17313-86.
United States Tax Court
T.C. Memo 1989-241; 1989 Tax Ct. Memo LEXIS 241; 57 T.C.M. (CCH) 436; T.C.M. (RIA) 89241; May 16, 1989. *241 Ps claimed substantial losses attributable to a weekend photography business which they operated out of the basement of their home. R determined that Ps failed to establish that the amount shown on their Schedule C was a sustained loss. R also determined that Ps failed to substantiate various rental property expenses, charitable contributions, medical expenses and expenditures for which Ps claimed a child care credit. Held, Ps failed to establish that they incurred losses in connection with their photography activities. Held further, Ps failed to substantiate various rental property expenses, itemized deductions and child care expenditures. Held further, Ps were negligent or intentionally disregarded rules and regulations in filing their 1982 Federal tax return. Sec. 6653(a)(1) and ( 2), I.R.C. Charles Young and Marjorie Young, pro se. Rose E. Gole, for the respondent. NIMS
MEMORANDUM FINDINGS OF FACT AND OPINION NIMS, Chief Judge: Petitioners filed their 1982 Federal return on May 2, 1983. In a statutory notice of deficiency mailed May 2, 1986, respondent determined a deficiency in petitioners' 1982 Federal income tax of $ 11,556 and additions to tax in the amounts of $ 57.97 pursuant to section 6651(a)(1), [1] $ 577.80 pursuant to section 6653(a)(1) and 50 percent of the section 6601 interest applicable to the determined underpayment pursuant to section 6653(a)(2). In his trial memorandum filed with this Court prior to trial and made part of the record, respondent adopts the position that an underpayment of $ 10,870 is attributable to negligence within the meaning of section 6653(a)(2). Respondent has conceded that *244 petitioners are entitled to an interest expense deduction of $ 3,083. He has also decided not to further pursue the section 6651(a)(1) addition to tax. After concessions, the issues remaining for decision are (1) whether petitioners incurred a deductible loss in transacting a photography business; (2) whether petitioners substantiated various claimed rental property expenses, charitable contributions, medical expenses and child care expenditures; and (3) whether respondent properly determined additions to tax under section 6653(a)(1) and (2). FINDINGS OF FACT Some of the facts have been stipulated by the parties and are found accordingly. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioners resided in St. Albans, New York, at the time they filed their joint petition. During the year at issue, Charles Young earned $ 29,262.74 and Marjorie Young (Mrs. Young is hereinafter referred to as petitioner in *245 the singular) earned $ 25,951.29 as employees of the United States Postal Service and the City of New York, respectively. Petitioners also derived gross income from renting two parcels of real estate during the year. Petitioners filed a joint income tax return for their 1982 taxable year on May 2, 1983. This return was prepared for petitioners by Minnie K. Clinton d/b/a CAP IT. Petitioners were referred to Clinton by Linnea Sealey. They contracted to pay Clinton approximately 25 percent of any combined Federal and state/city tax refund as a preparation fee. A referral fee of $ 2,918.12 (equivalent to 10 percent of the total refunds claimed on returns subsequently prepared by Clinton and filed by petitioners) was paid to Sealey as a referral fee. Clinton is not a certified public accountant, was not authorized to practice before the Internal Revenue Service at the time of trial and in fact possessed no formal degree in accounting. Clinton did however have some 18 years of accounting experience. In addition to preparing petitioners' 1982 Federal and New York state and city income tax returns, Clinton amended petitioners' respective 1980 and 1981 returns. Petitioners filed *246 the amended 1981 Federal return with respondent. Petitioners did not file the amended 1980 return. The prepared and filed returns claimed refunds of the following income tax overpayments: 1982 Federal
$ 10,396.58
1982 State/City
5,032.79
1981 Amended-Federal
10,204.00
1981 Amended-State/City
3,550.75
Total
$ 29,184.12
The overpayments of Federal income tax reflected on both the amended 1981 and 1982 returns were in large measure attributable to losses allegedly incurred in connection with a photography business which petitioners operated on weekends out of "a corner in their basement." Specifically, petitioners reported the following information on the 1982 Schedule C filed in connection with their alleged photography business: Gross receipts
$  29,425 Returns and allowances
( 2,894)
$  26,531
Cost of goods sold:
Beginning Inventory
1,400 Purchases
4,400 Labor (excluding self)
8,445 Materials and supplies
14,678 Ending Inventory
( 1,110)
Total cost of goods sold
27,813 Gross Loss
$ ( 1,282) Deductions:
Advertising
8,765 Car and truck expenses
2,971 Dues and publications
150 Laundry and cleaning
350 Legal and prof. services
3,500 Off. supplies and postage
1,255 Rent
869 Repairs
350 Taxes
2,836 Travel and entertainment
5,660 Utilities and telephone
550 Souvenirs
1,500 Greeting cards
400 Lab fees
1,500 Total deductions
(30,656)
Net Profit
$ (31,938)
*247 Sometime during 1982 or 1983, respondent's Brookhaven Service Center reported to respondent's Criminal Investigation Division that it had received many amended Federal tax returns prepared by Clinton, Viola Sawyer Singer and others working under their direction at CAP IT. These returns typically reclaimed every dollar of tax withheld, plus in some cases earned income credits, by creating a Schedule C for one of several types of alleged business activities: "selling a design, photography, Amway product sales and disco music services." Based upon a review of approximately 80 returns forwarded by the Brookhaven Service Center (including petitioners' 1981 amended return), a criminal investigation of CAP IT was initiated by respondent's Special Agent Therese Ann Marie Novey. As part of her investigation, Special Agent Novey seized various records from the premises of CAP IT. The seized records included a folder containing copies of petitioners' prepared tax returns, various receipts, some correspondence, and a copy of petitioners' preparation fee contract. None of the receipts seized from the CAP IT offices pertained to petitioners' photography business. Independent of Special *248 Agent Novey's criminal investigation of CAP IT, petitioners' 1982 return was selected for audit by respondent's office in Jamaica, New York. Respondent's audit determined that petitioners did not incur a photography loss, did not incur $ 3,370 of claimed expenses in connection with their rental of real estate and did not substantiate various itemized deductions and expenses paid in calculating a child care credit pursuant to section 21. OPINION Preliminarily, we feel compelled to answer certain constitutional arguments which petitioners raise on brief concerning their trial. Specifically, petitioners allege that our refusal to continue the trial to allow them to call rebuttal witnesses prevented them from exercising their Sixth Amendment guaranteed right to "have compulsory process for obtaining witnesses in their favor." The Sixth Amendment of the United States Constitution guarantees that "In all criminal prosecutions, the accused shall enjoy the right * * * to have compulsory process for obtaining witnesses in his favor * * *." The protections provided by the Sixth Amendment are, *249 however, available only in "criminal prosecutions." They are not applicable to civil proceedings and civil additions to the tax. United States v. Ward,448 U.S. 242, 248 (1980). Since the nature of petitioners' proceeding before this Court, i.e., a redetermination of their 1982 tax deficiency and section 6653(a) additions to tax, is civil in nature, Helvering v. Mitchell,303 U.S. 391, 401-405 (1938), Sixth Amendment safeguards do not apply. We do, however, observe that Rule 147 [2] promotes similar interests by permitting taxpayers to request the Court to issue subpoenas which may then be served upon persons possessing evidence or testimony they believe is important to their case. Respondent served petitioners with a copy of his trial memorandum approximately two weeks prior to trial. This trial memorandum disclosed that respondent intended to call Therese Novey, Special Agent in respondent's Criminal Investigation Division, to testify regarding her investigation of Minnie Clinton. Armed with the knowledge that Special Agent Novey would testify regarding her investigation, petitioners could have caused appropriate subpoenas to have been issued *250 and served upon all witnesses they required to present their version of the investigation. Rule 147. Notwithstanding the fact that petitioners are pro se, we do not believe that their decision to proceed without witnesses now gives them cause to complain that they failed to receive a fair adjudication of their petition. *251 Petitioners also allege that the transcript contains many misquotes and omissions. We find the examples cited by petitioners to be harmless errors which do not affect their substantial rights. Rule 160. The substantive tax issues presented in this case deal with (1) whether petitioners incurred losses from a photography business; (2) whether petitioners substantiated expenditures made in connection with their rental of real property, various itemized deductions and expenditures qualifying for the child care credit; and (3) whether petitioners were negligent in the preparation of their tax return. Petitioners predictably assert that they conducted a photography business during the year in issue. Petitioners also assert that the rental property expenses disallowed by respondent were incurred and properly substantiated by certain receipts seized by Special Agent Novey from CAP IT and subsequently lost by respondent. Respondent on the other hand attacks both the legitimacy of the claimed business losses and the existence of receipts which would substantiate petitioners' rental property expenditures. Upon review of the record, we find that petitioners failed to establish that *252 they incurred losses from their photographic activities. We do, however, find that the information seized during the CAP IT investigation substantiated certain repair expenses incurred in connection with petitioners' rental properties. We further find petitioners' 1982 underpayment of Federal income tax to be attributable to negligence or intentional disregard of the rules and regulations. Section 6653(a). Photography Business
Concerning the loss petitioners returned on Schedule C, respondent determined that "Since [petitioners] did not establish that the amount shown was (a) a loss, and (b) sustained by [petitioners], it is not deductible." This determination is presumed correct. Welch v. Helvering,290 U.S. 111 (1933). To overcome this presumption, petitioners bear the burden of proving that the amount shown on Schedule C was a sustained and deductible loss. Rule 142(a). Section 165(a) provides that any loss sustained during the taxable year and not compensated for by insurance or otherwise may be deducted. In the case of individuals, however, the deduction *253 of losses is limited to losses incurred in a trade or business, losses incurred in any nontrade or business transaction entered into for profit and various casualty losses. Section 165(c). As petitioners are individuals, they must therefore prove the returned loss was incurred in a trade or business or activity engaged in for profit. We begin our analysis by determining whether petitioners have established that they in fact incurred the claimed loss. On the facts presented, we find that petitioners have failed to establish a foundation for the revenues and expenses reported on their Schedule C. Accordingly, we find no loss was incurred from their alleged photographic activities. In attempting to establish that a loss was incurred, petitioner testified that the Schedule C reported only items which could be verified by Clinton. It is well established that "While the testimony of a taxpayer alone may be sufficient to satisfy his burden of proof with respect to some matters, the petitioner's bare assertion that [her] return was correct does not satisfy the burden." Roberts v. Commissioner,62 T.C. 834, 839 (1974). *254 Unfortunately, petitioner introduced no actual receipts, records or detailed testimony to augment or corroborate her sketchy, self-serving testimony. We do not accept petitioner's uncorroborated testimony that the returned revenues and expenses were substantiated. Cf. Davis v. Commissioner,88 T.C. 122, 141 (1987), affd. 866 F.2d 852 (6th Cir. 1989). On the contrary, we find petitioner's failure to come forward with the verification Clinton allegedly relied on in preparing the Schedule C, evidence which, if true, would prove favorable to her, gives rise to the presumption that if produced such evidence would be unfavorable. McKay v. Commissioner,89 T.C. 1063, 1069 (1987); Wichita Terminal Elevator Co. v. Commissioner,6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947). Buttressing our presumption that no favorable substantiation exists for the returned photographic revenues and expenses, we find petitioner's testimony casts serious doubt on whether certain expenditures comprising the Schedule C loss were made. For example, a $ 400 deduction for greeting cards was claimed as an "other *255 expense," yet petitioner was unable to identify where the alleged cards were sent. Similarly, a $ 8,765 advertising expenditure was claimed for the fees and table decorating costs incurred in displaying photographs at various conventions, yet petitioner could not with any degree of confidence or specificity recall the location of any convention visited during 1982. We also find several significant inconsistencies between the photographic activity described in the record and the various expenses claimed by petitioners. Petitioner testified that the alleged photography business was not operated out of a studio but rather was operated on weekends and occasional evenings out of a corner of the basement of her home. Petitioners would circulate among various "crowds" and using a "Polaroid Instamatic" and a "35-millimeter Kodak" camera would shoot up to four or five rolls of film in a given week. The identify of the persons photographed were often unknown to petitioners. Petitioners would then have the exposed film processed at a local camera shop and attempt to sell the finished photographs. No records were maintained of clients, bills sent to clients or income received from the *256 activity. As described in the record, petitioners' photography activity makes no mention of employees, yet petitioners claim labor costs of $ 8,445. The activity did not include maintaining formal accounting systems or records, yet petitioners claimed deductions of $ 1,255 for office supplies and postage and $ 3,500 for legal and professional services. The activity was not operated out of a studio, darkroom or other specialized photography facility, and contracted out the processing of exposed film, yet in addition to "lab fees" petitioners deducted $ 14,678 for materials and supplies. Based upon lack of substantiation in the record, our observations of petitioner's general demeanor and inability to demonstrate a knowledge of such rudimentary photographic terms as "film speed," "single lens reflex" and "rangefinder" and the inferences we draw from petitioners' 25 percent refund fee arrangement with CAP IT, we hold that petitioners have not established that the loss claimed on their Schedule C was sustained. We further hold that petitioners' failure to establish the loss is not attributable to Special Agent Novey's seizure of documents from the premises of CAP IT during the criminal *257 investigation of Clinton. Rather, we accept the testimony of Special Agent Novey that the seized receipts were unrelated to the photography losses. Because petitioners failed to prove a photography loss was incurred, we need not consider whether such a loss would be allowable. Thus, we do not address whether petitioners were engaged in a trade or business or activity entered into for profit. Rental Expenses
Respondent determined that $ 3,370 of the $ 8,676.83 of expenditures claimed by petitioners on their Schedule E were unsubstantiated. He correspondingly reduced petitioners' claimed rental loss by $ 3,370. To overcome respondent's conclusion, petitioners must substantiate the $ 8,676.83 of deductions they claimed. Rule 142(a). Petitioners, however, claim that the requisite substantiation is prevented by respondent's loss of receipts seized by Special Agent Novey during her investigation of CAP IT. In support of this assertion, petitioners refer us to the cross-examination testimony of Special Agent Novey wherein she admitted that the information seized from CAP IT and "identifiable as belonging to the Youngs' tax return files" contained "receipts for repairs and *258 expenses on property." We are persuaded by Special Agent Novey's testimony that the information seized from CAP IT contained substantiation for certain rental repairs. We are not, however, satisfied that this testimony fully satisfies petitioners' burden of proving entitlement to all claimed rental property expenses. Neither are we satisfied that Special Agent Novey's testimony fully substantiates the $ 1,391.22 claimed rental repair deductions. Petitioners provided us with no explanation of the types of repairs made or the circumstances that would cause the 1982 repair expenses to exceed amounts claimed in prior years. Lacking explanation, we refuse to accept at face value expenditures claimed on a return prepared under a percentage of refund fee arrangement. Rather, we exercise our discretion, Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930), and limit petitioners' rental repair expenses to the $ 265 amount shown on their original 1981 return. Having concluded that petitioners are entitled to $ 265 for repair expenses to their rental properties, we must next decide whether respondent allowed petitioners any portion of their $ 1,391.22 claimed repair expenses. *259 We are troubled by respondent's failure to specifically identify in his statutory notice of deficiency which $ 3,370 of the claimed $ 8,676.83 Schedule E deductions he is disallowing. Nonetheless, respondent's statement on brief that "The returns prepared by Ms. Clinton inflate the claimed deductible expenses by including additional costs for 'maintenance', 'painting and decorating', interest expenses, insurance and other miscellaneous items" leads us to believe that claimed repair expenses were among the expenses he disallowed in full. Accordingly, petitioners are entitled to an additional rental property loss of $ 265. At trial, petitioners produced several cancelled checks made payable to "Mr. James Watson," "Robert Fagan," "Mary Reid" and "Cash" to substantiate $ 895 of additional rental expenses allegedly incurred for carpentry, painting and unspecified fees. We do not find that these checks substantiate additional deductions. On the contrary, petitioners have failed to connect the various payees to the rental properties. We do not place any reliance on the "memo references" appearing on the face of the checks. These references appear to have been added in different colored *260 ink or with different types of pen. Itemized Deductions and Child Care Credit
Respondent disallowed petitioners' $ 2,795 of claimed medical deductions, $ 2,640 of claimed charitable contribution deductions and the $ 308 claimed child care credit because petitioners failed to substantiate each claimed expenditure. Petitioners have not offered any evidence which would substantiate the disallowed deductions and credit. Respondent's disallowance is therefore sustained. Negligence Additions
Respondent's statutory notice of deficiency stated that "Since all or part of [the deficiency in] tax is due to negligence or intentional disregard of rules and regulations, [petitioners] are liable for a penalty under section 6653(a) of the Internal Revenue Code." Respondent's determination of additions to tax due to negligence or intentional disregard of rules and regulations is presumptively correct, and petitioners bear the burden of proving the imposition was in error. Bixby v. Commissioner,58 T.C. 757, 791-792 (1972). Petitioners prove that *261 they are not negligent upon showing that they acted as reasonable and ordinarily prudent persons would act under similar circumstances. Neely v. Commissioner,85 T.C. 934, 947 (1985). Section 6001 and the regulations issued thereunder require taxpayers to adequately maintain sufficient books and records "to establish the amount of gross income, deductions, credits, or other matters required to be shown by such person in any [tax] return * * *." Section 1.6001-1(a), Income Tax Regs. Petitioners failed to keep records substantiating the receipts and expenditures associated with their alleged photographic business. Moreover, they were advised in prior years by other tax preparers that their alleged photographic losses were not allowable. We do not believe that a prudent taxpayer, knowing of the questionable tax treatment of an activity, would deduct a loss derived from unsubstantiated deductions and compiled by a preparer whose fee was contingent upon the size of the refund obtained. Nor do we find petitioners' return position to reflect a *262 good faith reliance on the advice of a competent tax expert. Petitioners may not shift responsibility for filing an accurate return to their agent Clinton. See American Properties, Inc. v. Commissioner,28 T.C. 1100, 1116-1118 (1957), affd. 262 F.2d 150 (9th Cir. 1958); compare Otis v. Commissioner,73 T.C. 671, 675 (1980) (where good faith reliance on the advice of a competent tax expert relieved the taxpayer from a negligence addition). Accordingly, we affirm respondent's determination of both negligence additions under section 6653(a)(1) and (2). To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to sections of the Internal Revenue Code as in effect for the year in issue. All Rules references are to the Tax Court Rules of Practice and Procedure.↩
2. Rule 147 provides in pertinent part: (a) Attendance of Witnesses; Form; Issuance: * * * A subpoena, including a subpoena for the production of documentary evidence, signed and sealed but otherwise in blank, shall be issued to a party requesting it, who shall fill it in before service. Subpoenas may be obtained at the Office of the Clerk in Washington, D.C., or from a trial clerk at a trial session. See Code Section 7456(a). * * * (c) Service: A subpoena may be served by a United States marshal, or by his deputy, or by any other person who is not a party and is not less than 18 years of age. Service of a subpoena upon a person named therein shall be made by delivering a copy thereof to such person and by tendering to him the fees for one day's attendance and the mileage allowed by law. * * * (e) Contempt: Failure by any person without adequate excuse to obey a subpoena served upon him may be deemed a contempt of the Court.↩